UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| S.L.D., | ) | |
| T.A.M., | ) | |
| G.E.S., | ) | |
| N.R.T., | ) | |
| R.A.T., | ) | Case No. 4:24-CV-1412 JSD |
| K.J.T., | ) | |
| A.R.R., | ) | |
| J.A.R., | ) | |
| K.J.M., | ) | |
| S.L.T., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| T.L.A. | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF FLORISSANT, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| OFFICER JULIAN ALCALA | ) | |
|     Defendants. | ) | |

**PLAINTIFFS' THIRD AMENDED COMPLAINT, CIVIL RIGHTS, 42 U.S.C. 1983: UNLAWFUL SEARCH, UNLAWFUL SEIZURE, SUBSTANTIVE DUE PROCESS, AND _MONELL_ LIABILITY**

S.L.D., T.A.M., G.E.S., N.R.T., R.A.T., K.J.T., A.R.R., J.A.R., K.J.M. S.L.T. and T.L.A., by counsel W. Bevis Schock and Daniel L. Goldberg, state as their Third Amended Complaint, Civil Rights, 42 U.S.C. 1983, for Unlawful Search, Unlawful Seizure, and Substantive Due Process, against Officer Julian Alcala in his individual capacity only, and for _Monell_ liability against the City of Florissant:

**INTRODUCTION**

1.     During traffic stops Defendant Officer Julian Alcala took each Plaintiffs' cell phones back

1

to his patrol car, (ostensibly to check on their insurance), and then used his phone to take pictures of photos they had of themselves on their phones, unclothed.  He observed those photos himself, and, on inference, distributed the photos to others.  On inference, and subject to discovery, the City was the cause of those acts through unconstitutional hiring, retention, and supervision of Alcala, and through the unconstitutional allowing of such conduct to become the City's custom and practice.  There are approximately 25 victims.

## JURISDICTION AND VENUE

2.    Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 and § 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

3.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

4.    Venue is proper in this Court under 28 U.S.C. § 1391 because the relevant events occurred within St. Louis County, Missouri, which is within the Eastern Division of this Court.

## COLOR OF STATE LAW

5.    At all relevant times, both Defendants acted under color of state law.  Particularly, at all relevant times, both Defendants acted under the color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri.

## JURY DEMAND

6.    Plaintiffs demand a jury trial on all factual issues, including damages.

## PARTIES

7.    Plaintiff S.L.D. is an individual residing in St. Louis County, Missouri.

8.    Plaintiff T.A.M. is an individual residing in St. Charles County, Missouri.

9.    Plaintiff G.E.S. is an individual residing in St. Louis County, Missouri.

10.     Plaintiff N.R.T. is an individual residing in St. Louis County, Missouri.

11.     Plaintiff R.A.T. is an individual residing in St. Louis County, Missouri.

12.     Plaintiff K.J.T. is an individual residing in St. Louis County, Missouri.

12-1.   Plaintiff A.R.R. is an individual residing in Ocean Side, California.  She is married to Plaintiff J.A.R.

12-2.   Plaintiff J.A.R. is an individual residing in Ocean Side, California. He is married to Plaintiff A.R.R.

12-3.   Plaintiff K.J.M. is an individual residing in Madison County, Illinois.  K.J.M. and S.L.T. are partners.

12-4.   Plaintiff S.L.T. is an individual residing in Madison County, Illinois.  K.J.M. and S.L.T. are partners.

12-5.   Plaintiff T.L.A. is an individual residing in St. Charles County, Missouri.

13.     Defendant City of Florissant is a lawfully formed and functioning municipality in St. Louis County, Missouri.

14.     Defendant Officer Julian Alcala is an individual residing in Jefferson County, Missouri.

15.     At all relevant times Alcala was employed as a police officer by Defendant City of Florissant.  Plaintiffs seek to hold him liable in his individual capacity only.

## FACTS

### Alcala's Conduct – in General – Applicable to All Six Plaintiffs

### (Plaintiff will state the individual facts applicable to each Plaintiff starting at para. 61)

16.     In the time period winter through summer of 2024 each Plaintiff was driving in Florissant and Officer Julian Alcala used his patrol lights to pull over each Plaintiff. The following events then occurred on each occasion.

17.   Alcala asked for proof of insurance, and each Plaintiff explained that her proof of insurance was on her phone.

18.   Alcala demanded to each Plaintiff that she open her phone and each Plaintiff complied.

19.   Alcala took each Plaintiff's phone back to his patrol car.

20.   Alcala searched the photos on each Plaintiff's phone.

21.   On the phone each had one or more pictures of herself unclothed (although in one case the photo was of an unknown person partially unclothed), and in several cases the photos included pictures of private parts.

22.   Each Plaintiff had these pictures on her phone for her own personal reasons and private purposes.

23.   Alcala found the pictures.

24.   Alcala used his phone to take pictures of the pictures each Plaintiff was storing on her phone.

25.   On inference, with the facts to be determined in discovery, Alcala distributed those pictures to others.

**No Plaintiffs Had Knowledge**

26.   None of the Plaintiffs had knowledge that Alcala had taken photos of her photos or had distributed the photos to others, if that occurred, until an FBI agent contacted each Plaintiff several months later.

**No Warrants, No Probable Cause**

27.   Alcala did not have a warrant to search or seize any of the Plaintiffs' phones or the pictures on each Plaintiff's phone.

28.   Alcala did not have probable cause to search or seize any of the Plaintiffs' phones or the

pictures on each Plaintiff's phone.

### No Permission

29.     No Plaintiff gave Alcala permission to:

    a.     Examine the photos on her phone,

    b.     Take photos of the pictures on her phone,

    c.     Distribute those pictures to others, if that occurred.

### Other Victims

30.     On information and belief there are approximately 21 victims.

### Indictment

31.     On November 13, 2024, the United States indicted Alcala for this conduct, see Case Nos.

    4:24-CR-00594 HEA SRW, and 4:24-CR-00594 HEA SRW-1.

### The City's Conduct

32.     On inference, and subject to discovery, the City was the cause of these acts through the

    unconstitutional hiring, retention, and supervision of Alcala, and through the

    unconstitutional allowing of such conduct to become a custom and practice.

33.     On inference the City's conduct was a deliberate choice of a guiding principle or

    procedure made by municipal officials with final authority regarding such matters.[1]

### DAMAGES TO PLAINTIFFS

34.     Each Plaintiff has suffered shocking degradation and egregious humiliation.

35.     Each Plaintiff has suffered stress, fear and indignity.

36.     Each Plaintiff has lost respect for police and law enforcement.

37.     Each Plaintiff has suffered loss of enjoyment of life.

---

[1] *Corwin v. City of Independence.*, 829 F.3d 695, 700 (8th Cir. 2016)

38.    Some Plaintiffs, as stated below, have suffered only garden variety emotional distress.

39.    Some Plaintiffs, also as stated below, have suffered emotional distress that is medically significant and for which they are seeking treatment.

40.    Each Plaintiff's damages are continuing into the present and will continue into the foreseeable future.

## UNREASONABLE SEARCH AND SEIZURE,
## WELL ESTABLISHED OR SO EGREGIOUS

41.    The search of Plaintiffs' photos on their cell phones served no legitimate law enforcement or government purpose and was unconstitutional under the Fourth Amendment.

42.    The seizure of Plaintiffs' photos by Alcala, by his taking pictures with his phone of those photos, served no legitimate law enforcement purpose, and was unconstitutional under the Fourth Amendment.

43.    The right to be free of an unreasonable seizure of unclothed photos on a cell phone by government actors, for no legitimate law enforcement or government purpose, is well established, or the conduct is so egregious that any reasonable officer would have realized that searching Plaintiff's phone for photos of herself unclothed would offend the Constitution and so no prior case with the same fact pattern is required to meet the clearly established prong of the qualified immunity analysis.[2]

## POSSIBLE DISTRIBUTION OF PHOTOS TO OTHERS

44.    On inference Alcala, after he had seized each Plaintiff's photos he distributed each Plaintiff's photos to others.

45.    In the alternative, for damages purposes, any distribution of the photos to others falls

---

[2] *Taylor v. Riojas*, 592 U.S. 7, 9 (2020)

within the ambit of the unconstitutional seizure of the photos.

**BODILY INTEGRITY, RIGHT TO PRIVACY, SUBSTANTIVE DUE PROCESS**

46.    The right to privacy is embodied in the Fourteenth Amendment and includes an individual's interest in avoiding disclosures of personal matters.[3]

47.    In this case Plaintiffs distinguish the seizure of the photos from the observation of the photos, and/or the distribution of the photos, and thus the substantive due process claim may be brought in addition to the unconstitutional searches claim and the unconstitutional seizure claims.

48.    The observation of each Plaintiff's photos was either a shocking degradation and/or an egregious humiliation of each Plaintiff to further some specific state interest, and/or a flagrant breach of a pledge of confidentiality which was instrumental in obtaining the personal information.[4]

49.    The distribution of those photos to others, if that occurred, was either a shocking degradation and/or an egregious humiliation of each Plaintiff to further some specific state interest, and/or a flagrant breach of a pledge of confidentiality which was instrumental in obtaining her personal photos.[5]

50.    Plaintiffs acknowledge *Dillard v. O'Kelley*, 961 F.3d 1048 (8th Cir. 2020) rejecting in the Eighth Circuit a constitutional right to privacy in electronic records.  Plaintiffs in good faith seek a change in the law, perhaps by resolution of a circuit split by the Supreme

---

[3] *Alexander v. Peffer*, 993 F.2d 1348, 1349 (8th Cir. 1993) citing *Whalen v. Roe*, 429 U.S. 589 (1977)

[4] *Eagle v. Morgan*, 88 F.3d 620, 625 (8th Cir. 1996), cited favorably in *Roskens v. Graham*, 435 F. Supp. 3d 955, 976 (N.D. Iowa 2020).

[5] *Eagle v. Morgan*, 88 F.3d 620, 625 (8th Cir. 1996), cited favorably in *Roskens v. Graham*, 435 F. Supp. 3d 955, 976 (N.D. Iowa 2020).

Court. See footnote 6 of that opinion, Grasz concurring, which reads:

> Several of our sister circuits have denied qualified immunity while finding the right to informational privacy was clearly established. *See Anderson v. Blake*, 469 F.3d 910, 912, 917 (10th Cir. 2006) (video of rape victim's assault disclosed by police officer); *Sterling v. Borough of Minersville*, 232 F.3d 190, 192 (3d Cir. 2000) (threat to disclose arrestee's sexual orientation); *Denius v. Dunlap*, 209 F.3d 944, 956–57 (7th Cir. 2000) (medical information of a teacher); *James v. City of Douglas, Georgia*, 941 F.2d 1539, 1540–41 (11th Cir. 1991) (police officer viewed and allowed other people to view video of informant and suspect engaging in sexual activity). Other circuits have recognized the right and found violations. *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) (recognizing the constitutional right to confidentiality of a HIV diagnosis).

51. Each Plaintiff had a legitimate expectation that if Alcala did obtain such photos, that the photos would remain confidential while in his possession.[6]

52. The photos were inherently private and are thus entitled to constitutional protection.[7]

53. The right to privacy is deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.[8]

54. Each Plaintiff has a Fourteenth Amendment due process right as a protection against unreasonable bodily intrusions by state-actors, which includes a substantive due process right to bodily integrity and bodily privacy.[9]

---

[6] *Eagle v. Morgan*, 88 F.3d 620, 625 (8th Cir. 1996), cited favorably in *Roskens v. Graham*, 435 F. Supp. 3d 955, 976 (N.D. Iowa 2020).

[7] *Eagle v. Morgan*, 88 F.3d 620, 625 (8th Cir. 1996), cited favorably in *Roskens v. Graham*, 435 F. Supp. 3d 955, 976 (N.D. Iowa 2020).

[8] *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)

[9] The Supreme Court has recognized a "liberty interest" in "bodily integrity," *id.*, meaning the Due Process Clause protects individuals from some government intrusions into their body. *United States v. Morris*, 494 F. App'x 574, 580 (6th Cir. 2012) (explaining a Fourteenth Amendment due process right as "protection against unreasonable bodily intrusions by state-actors"); *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 795 (8th Cir. 1998) (recognizing a "substantive due process right to bodily integrity"); *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1160–61 (9th Cir. 2020) (discussing Fourteenth Amendment's clearly established due process right to "bodily privacy"), *Doe v. Saint Louis Pub. Sch.*, No. 4:19-CV-3080-MTS, 2022 WL 2156970, at *4 (E.D. Mo. June 15, 2022).

55. If it occurred, Alcala's distribution of the photos to others shocks the conscience.[10]

56. Even if Alcala did not distribute the photos to others, the seizure of the photos by him shocks the conscience.

57. Alcala's conduct was truly irrational, that is, it was something more than arbitrary, capricious, or a violation of state law.[11]

## *MONELL* LIABILITY[12]

58. On inference, supported by the number of victims:

   a. There was a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; or

   b. There was deliberate indifference to or tacit authorization of such conduct by the city's policymaking officials after notice to the officials of that misconduct; or

   c. G.E.S. was injured by acts pursuant to the City's custom, that is, the custom was a moving force behind the constitutional violation.[13]

   d. Officials of the City of Florissant should have known Alcala was engaged in misconduct because of his many stops of females without giving them tickets.

## PUNITIVE DAMAGES AGAINST ALCALA

---

[10] "Most cases that involve unwanted sexual contact or harassment by public officials have been analyzed under the substantive due process right to be free from violations of bodily integrity under the Fourteenth Amendment." *Fontana v. Haskin*, 262 F.3d 871, 881–82 n.6 . (9th Cir. 2001). "Under the Fourteenth Amendment's substantive due process prong, we use the 'shocks the conscience' test." *Id.* at 882 n.7 (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846, (1998)). "The threshold question is 'whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " *Id.* (quoting *Sacramento*, 523 U.S. at 848 n. 8). *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1162 (9th Cir. 2020).

[11] *Klein v. McGowan,* 198 F.3d 705, 710 (8th Cir.1999)

[12] *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).

[13] *Corwin v. City of Independence.*, 829 F.3d 695, 700 (8th Cir. 2016), (quoting *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014))

59.    Alcala's conduct was malicious or recklessly indifferent to each Plaintiff's constitutional right to be free of unanimous consent search, unconstitutional seizure, and substantive due process.[14]

60.    Alcala's conduct involved intentional malice and repetition of the wrongful conduct.[15]

## INDIVIDUALIZED FACTS FOR EACH PLAINTIFF

### S.L.D.

61.    In February 2024 S.L.D. was driving in Florissant while on the phone with her mother, and Defendant Alcala used his patrol lights to pull her over.

62.    He pulled her over because, allegedly, one of her back lights was out.

63.    He never gave her a ticket.

64.    Alcala asked for her proof of insurance, and she explained that her proof of insurance was on her phone.

65.    Alcala demanded that she open her phone and she complied.

66.    Alcala took her phone back to his patrol car.

67.    He kept the phone in his patrol car for approximately 10 minutes.

68.    During that time Alcala searched the photos on her phone.

69.    On her phone she had several pictures of herself wholly unclothed, including pictures of her most private parts.

70.    She had those pictures on her phone for her own private purposes.

71.    Alcala found the pictures.

72.    Alcala used his phone to take pictures of those pictures.

---

[14] 8th Cir. model jury instructions, 4.72.
[15] 8th Cir. model jury instructions, 4.72.

73.  Alcala observed those pictures himself.

74.  On inference, Alcala distributed those pictures to others.

**Damages**

75.  S.L.D. has at least garden variety emotional distress, including the damages outlined elsewhere.

76.  S.L.D. may also seek counseling for the emotional harm she is suffering as a result of Alcala's conduct.

**T.A.M.**

77.  On March 19, 2024, T.A.M. was driving in Florissant and Defendant Alcala used his patrol lights to pull her over.

78.  He pulled her over because she allegedly made a right turn on green without using her blinker.

79.  He never gave her a ticket.

80.  Alcala asked for her proof of insurance, and she explained that her proof of insurance was on her phone.

81.  Alcala demanded that she open her phone and she complied.

82.  Alcala took her phone back to his patrol car.

83.  He kept the phone in his patrol car for approximately 10 minutes.

84.  During that time Alcala searched the photos on her phone.

85.  On her phone she had several pictures of herself wholly unclothed, including pictures of her most private parts, and pictures of herself engaged in intercourse with her husband.

86.  She had those pictures on her phone for her own private purposes.

87.  Alcala found the pictures.

88.   Alcala used his phone to take pictures of those pictures.

89.   Alcala observed those pictures himself.

90.   On inference, Alcala distributed those pictures to others.

**Damages**

91.   T.A.M. has at least garden variety emotional distress, including the damages outlined elsewhere.

92.   T.A.M. may also seek counseling for the emotional harm she is suffering as a result of Alcala's conduct.

**G.E.S.**

93.   On two separate occasions, in approximately spring and summer 2024 G.E.S. was driving in Florissant and Defendant Alcala used his patrol lights to pull her over.

94.   On each occasion he pulled her over for an allegedly broken taillight.

95.   He never gave her a ticket.

96.   In each case Alcala asked for her proof of insurance, and she explained that her proof of insurance was on her phone.

97.   Alcala demanded that she open her phone and she complied.

98.   Alcala took her phone back to his patrol car.

99.   He kept the phone in his patrol car for approximately 10 minutes.

100.  During that time Alcala searched the photos on her phone.

101.  On her phone she had several pictures of herself wholly unclothed, including pictures of her most private parts.

102.  She had those pictures on her phone for her own private purposes.

103.  Alcala found the pictures.

104.    Alcala used his phone to take pictures of those pictures.

105.    Alcala observed those pictures himself.

106.    On inference, Alcala distributed those pictures to others.

**Damages**

107.    G.E.S. has at least garden variety emotional distress, including the damages outlined elsewhere.

108.    G.E.S. may also seek counseling for the emotional harm she is suffering as a result of Alcala's conduct.

**N.R.T.**

109.    On four different occasions in spring and summer 2024 N.R.T. was driving in Florissant and Defendant Alcala used his patrol lights to pull her over.

110.    On each occasion she was driving for Imo's.

111.    On each occasion he asserted that she was speeding.

112.    On one occasion he gave her a seat belt ticket, to which she pled guilty and paid a $10 fine.

113.    On the other occasions he did not give her a ticket.

114.    Alcala asked for her proof of insurance, and she explained that her proof of insurance was on her phone.

115.    Alcala demanded that she open her phone and she complied.

116.    Alcala took her phone back to his patrol car.

117.    He kept the phone in his patrol car for approximately 10 minutes.

118.    During that time Alcala searched the photos on her phone.

119.    On her phone she had several pictures of herself wholly unclothed, including pictures of

her most private parts.

120. She had those pictures on her phone for her own private purposes.

121. Alcala found the pictures.

122. Alcala used his phone to take pictures of those pictures.

123. Alcala observed those pictures himself.

124. On inference, Alcala distributed those pictures to others.

**Damages**

125. N.R.T. has at least garden variety emotional distress, including the damages outlined elsewhere.

126. N.R.T. may also seek counseling for the emotional harm she is suffering as a result of Alcala's conduct.

**R.A.T.**

127. In spring or summer of 2024 R.A.T. was driving in Florissant and Defendant Alcala used his patrol lights to pull her over.

128. He pulled her over because she was allegedly texting while driving.

129. He never gave her a ticket.

130. Alcala asked for her proof of insurance, and she explained that her proof of insurance was on her phone.

131. Alcala demanded that she open her phone and she complied.

132. Alcala took her phone back to his patrol car.

133. He kept the phone in his patrol car for approximately 10 minutes.

134. During that time Alcala searched the photos on her phone.

135. On her phone she had a single sexualized picture of another person

136.    She had that picture on her phone for her own private purposes.

137.    Alcala found the picture.

138.    Alcala used his phone to take a pictures of that picture.

139.    Alcala observed that picture himself.

140.    On inference, Alcala distributed that picture to others.

## Damages

141.    R.A.T. has at least garden variety emotional distress, including the damages outlined elsewhere.

142.    R.A.T. may also seek counseling for the emotional harm she is suffering as a result of Alcala's conduct.

## K.J.T.

143.    On May 18, 2024, the day before she graduated from high school, K.J.T. was driving in Florissant and Defendant Alcala used his patrol lights to pull her over.

144.    He told her she was speeding 42/30.

145.    He never gave her a ticket.

146.    Alcala asked for her proof of insurance, and she explained that her proof of insurance was on her phone.

147.    Alcala demanded that she open her phone and she complied.

148.    Alcala took her phone back to his patrol car.

149.    He kept the phone in his patrol car for approximately 10 minutes.

150.    During that time Alcala searched the photos on her phone.

151.    On her phone she had several pictures of herself unclothed.

152.    She had those pictures on her phone for her own private purposes.

153.    The pictures were of herself while she was still a minor.

154.    Alcala found the pictures.

155.    Alcala used his phone to take pictures of those pictures.

156.    Alcala observed those pictures himself.

157.    On inference, Alcala distributed those pictures to others.

## Damages

158.    K.J.T. has at least garden variety emotional distress.

159.    K.J.T. may also seek counseling for the emotional harm she is suffering as a result of Alcala's conduct.

## A.R.R.

159-1.    In spring or summer of 2024 A.R.R. was driving in Florissant and Defendant Alcala used his patrol lights to pull her over.

159-2.    He never gave her a ticket.

159-3.    Alcala asked for her proof of insurance, and she explained that her proof of insurance was on her phone.

159-4.    Alcala demanded that she open her phone and she complied, and she stated to him as she handed him the phone that he should not look at the photos.

159-5.    Alcala took her phone back to his patrol car.

159-6.    He kept the phone in his patrol car for several minutes.

159-7.    During that time Alcala searched the photos and videos on her phone.

159-8.    On her phone she had several pictures of herself unclothed, and pictures of herself and her husband, J.A.R. engaged in unclothed intimate acts.

159-9.    She had those pictures on her phone for her own private purposes.

159-10.     Alcala found the pictures and videos.

159-11.     Alcala used his phone to take pictures and/or videos of those pictures and videos.

159-12.     Alcala observed those pictures and/or videos himself.

159-13.     On inference, Alcala distributed those pictures to others.

**Damages**

159-14.     A.R.R. has at least garden variety emotional distress, including the damages

outlined elsewhere.

**J.A.R.**

159-15.     In spring or summer of 2024 A.R.R. was driving in Florissant and Defendant

Alcala used his patrol lights to pull her over.

159-16.     He never gave her a ticket.

159-17.     Alcala asked for her proof of insurance, and she explained that her proof of

insurance was on her phone.

159-18.     Alcala demanded that she open her phone and she complied.

159-19.     Alcala took her phone back to his patrol car.

159-20.     He kept the phone in his patrol car for several minutes.

159-21.     During that time Alcala searched the photos and videos on her phone.

159-22.     On her phone she had several pictures of herself unclothed, and pictures of herself

and her husband, J.A.R. engaged in unclothed intimate acts.

159-23.     She had those pictures on her phone for her own private purposes.

159-24.     Alcala found the pictures and videos.

159-25.     Alcala used his phone to take pictures and/or videos of those pictures and videos.

159-26.     Alcala observed those pictures and/or videos himself.

159-27.    On inference, Alcala distributed those pictures and/or videos to others.

**Damages**

159-28.    J.A.R. has at least garden variety emotional distress, including the damages

outlined elsewhere.

**K.J.M.**

159-29.    In spring or summer of 2024 K.J.M. was driving in Florissant and Defendant

Alcala used his patrol lights to pull her over.

159-30.    He never gave her a ticket.

159-31.    Alcala asked for her proof of insurance, and she explained that her proof of

insurance was on her phone.

159-32.    Alcala demanded that she open her phone and she complied.

159-33.    Alcala took her phone back to his patrol car.

159-34.    He kept the phone in his patrol car for several minutes.

159-35.    During that time Alcala searched the photos and videos on her phone.

159-36.    On her phone she had several pictures of her partner, S.L.T. unclothed.

159-37.    She had those pictures on her phone for her own private purposes.

159-38.    Alcala found the pictures and videos.

159-39.    Alcala used his phone to take pictures and/or videos of those pictures and videos.

159-40.    Alcala observed those pictures and/or videos of S.L.T.

159-41.    On inference, Alcala distributed those pictures and/or videos to others.

159-42.    On that phone there were no pictures of K.J.M. unclothed.

**Damages**

159-43.    K.J.M. has garden variety emotional distress, including the damages outlined

elsewhere.

## S.L.T.

159-44.      In spring or summer of 2024 K.J.M. was driving in Florissant and Defendant

Alcala used his patrol lights to pull her over.

159-45.      He never gave her a ticket.

159-46.      Alcala asked for her proof of insurance, and she explained that her proof of

insurance was on her phone.

159-47.      Alcala demanded that she open her phone, and she complied.

159-48.      Alcala took her phone back to his patrol car.

159-49.      He kept the phone in his patrol car for several minutes.

159-50.      During that time Alcala searched the photos and videos on her phone.

159-51.      On her phone she had several pictures of her partner, S.L.T. unclothed.

159-52.      She had those pictures on her phone for her own private purposes.

159-53.      Alcala found the pictures and videos.

159-54.      Alcala used his phone to take pictures and/or videos of those pictures and videos.

159-55.      Alcala observed those pictures and/or videos of S.L.T.

159-56.      On inference, Alcala distributed those pictures and/or videos to others.

## Damages

159-57.      S.L.T. has at least garden variety emotional distress, including the damages

outlined elsewhere.

159-58.      S.L.T. may also seek counseling for the emotional harm she is suffering as a result

of Alcala's conduct.

## T.L.A.

159-59.     On May 9, 2024, T.L.A. was driving in Florissant and Defendant Alcala used his patrol lights to pull her over.

159-60.     She did have expired plates, but he never gave her a ticket.

159-61.     Alcala asked for her proof of insurance, and she explained that her proof of insurance was on her phone.

159-62.     Alcala demanded that she open her phone, and she complied.

159-63.     Alcala took her phone back to his patrol car.

159-64.     He kept the phone in his patrol car for several minutes.

159-65.     During that time Alcala searched the photos and videos on her phone.

159-66.     On her phone she had several pictures and videos of herself unclothed.

159-67.     She had those pictures on her phone for her own private purposes.

159-68.     Alcala found the pictures and/or videos.

159-69.     On inference Alcala used his phone to take pictures and/or videos of those pictures and/or videos.

159-70.     Alcala observed those pictures and/or videos of T.L.A.

159-71.     On inference, Alcala distributed those pictures and/or videos to others.

### Damages

159-72.     T.L.A. has at least garden variety emotional distress, including the damages outlined elsewhere.

159-73.     T.L.A. may also seek counseling for the emotional harm she is suffering as a result of Alcala's conduct.

### ATTORNEY'S FEES AND COSTS

160.   In pursuit of her § 1983 civil rights claims, each Plaintiff is incurring reasonable

attorney's fees, and also taxable and non-taxable costs

## COUNT I
## UNCONSTITUTIONAL SEARCH AGAINST ALCALA
## EACH PLAINTIFF

161. Plaintiffs incorporate all prior paragraphs.

162. *First,* during traffic stops Defendant Alcala searched each Plaintiff's photos on each Plaintiff's phone and saw photos of Plaintiff unclothed, (with two exceptions R.A.T. and K.J.M. as stated above), and

163. *Second,* the search of the photos on each Plaintiff's phone was not reasonably necessary for the traffic stop, and

164. *Third,* as a direct result, each Plaintiff was damaged.[16]

165. Alcala's conduct therein was malicious or recklessly indifferent to each Plaintiff's constitutional rights.[17]

166. Alcala's conduct therein involved intentional malice and repetition of the wrongful conduct.[18]

WHEREFORE, each Plaintiff prays for compensatory damages against Defendant Officer Julian Alcala in his individual capacity for violation of her constitutional right to be free of unreasonable search, for punitive damages, and for taxable costs, non-taxable costs, reasonable statutory attorney's fees under 42 U.S.C. § 1988, and for such other relief as may be just, meet and reasonable.

## COUNT II
## UNCONSTITUTIONAL SEIZURE AGAINST ALCALA
## EACH PLAINTIFF

---

[16] 8th Cir. model jury instructions, 4.40.
[17] 8th Cir. model jury instructions, 4.72.
[18] 8th Cir. model jury instructions, 4.72.

21

167.   Plaintiffs incorporate all prior paragraphs.

168.   *First,* Defendant Alcala used his own phone to take pictures of the photos of herself on each of Plaintiff's phone, unclothed, (with two exceptions, R.A.T. and K.J.M. as stated above), and

169.   *Second,* the taking of pictures of photos on each Plaintiff's phone which showed each Plaintiff unclothed was not reasonably necessary for the traffic stop, and

170.   *Third,* as a direct result, the Plaintiff was damaged. [19]

171.   In the alternative, the distribution of the photos to others was part of the damages for the seizure of the photos.

172.   Alcala's conduct therein was malicious or recklessly indifferent to each Plaintiff's constitutional rights.[20]

173.   Alcala's conduct therein involved intentional malice and repetition of the wrongful conduct.[21]

WHEREFORE, each Plaintiff prays for compensatory damages against Defendant Officer Julian Alcala in his individual capacity for violation of her constitutional right to be free of unreasonable seizure, for punitive damages, and for taxable costs, non-taxable costs, reasonable statutory attorney's fees under 42 U.S.C. § 1988, and for such other relief as may be just, meet and reasonable.

**COUNT III**
**SUBSTANTIVE DUE PROCESS AGAINST ALCALA**
**FOR OBSERVING THE PHOTOS**
**IN THE ALTERNATIVE**
**EACH PLAINTIFF (BUT NOT R.A.T. OR K.J.M.)**

---

[19] 8th Cir. model jury instructions, 4.40.
[20] 8th Cir. model jury instructions, 4.72.
[21] 8th Cir. model jury instructions, 4.72.

22

174.    Plaintiffs incorporate all prior paragraphs.

175.    *First*, Defendant Alcala observed the photos of each Plaintiff, unclothed, (with two exceptions, R.A.T. or K.J.M., as stated above), and

176.    *Second*, that action was so egregious and outrageous that it shocks the conscience and was not justified by governmental interest, and

177.    *Third*, as a direct result, each Plaintiff (except R.A.T. or K.J.M.) was damaged.[22]

178.    Alcala's conduct therein was malicious or recklessly indifferent to each affected Plaintiff's constitutional rights.[23]

179.    Alcala's conduct therein involved intentional malice and repetition of the wrongful conduct.[24]

WHEREFORE, each Plaintiff (except R.A.T. and K.J.M.) prays for compensatory damages against Defendant Officer Julian Alcala in his individual capacity for violation of that Plaintiff's constitutional right to substantive due process, for punitive damages, and for taxable costs, non-taxable costs, reasonable statutory attorney's fees under 42 U.S.C. § 1988, and for such other relief as may be just, meet and reasonable.

## COUNT IV
## SUBSTANTIVE DUE PROCESS AGAINST ALCALA
## FOR DISTRIBUTION OF THE PHOTOS
## IN THE ALTERNATIVE
## EACH PLAINTIFF (BUT NOT R.A.T. OR K.J.M.)

180.    Plaintiffs incorporate all prior paragraphs.

181.    *First*, Defendant Alcala distributed the photos of each Plaintiff, unclothed, (with two exceptions, R.A.T. or K.J.M., as stated above), to other persons, and

---

[22] 8th Cir. model jury instructions, 4.40, *Vaughn v. Ruoff*, 304 F.3d 793, 796 (8th Cir. 2002).
[23] 8th Cir. model jury instructions, 4.72.
[24] 8th Cir. model jury instructions, 4.72.

182. S*econd*, that action was so egregious and outrageous that it shocks the conscience and was not justified by governmental interest, and

183. *Third*, as a direct result, each Plaintiff (except R.A.T. or K.J.M.) was damaged.[25]

184. Alcala's conduct therein was malicious or recklessly indifferent to each affected Plaintiff's constitutional rights.[26]

185. Alcala's conduct therein involved intentional malice and repetition of the wrongful conduct.[27]

WHEREFORE, each Plaintiff (except R.A.T. or K.J.M.) prays for compensatory damages against Defendant Officer Julian Alcala in his individual capacity for violation of Plaintiff's constitutional right to substantive due process, for punitive damages, and for taxable costs, non-taxable costs, reasonable statutory attorney's fees under 42 U.S.C. § 1988, and for such other relief as may be just, meet and reasonable.

## COUNT V
### *MONELL* CLAIM AGAINST CITY OF FLORISSANT

186. Plaintiffs incorporate all prior paragraphs.

187. *First*, Defendant Alcala deprived each Plaintiffs of her constitutional rights as specified above, [in other instructions], and

188. *Second*, the deprivation of each Plaintiff's constitutional rights directly resulted from either Defendant City of Florissant's (1) failure to supervise, (2) failure to train, or (3) an unofficial custom, or (4) widespread pattern of misconduct; and

189. *Third*, as a direct result, each Plaintiff was injured.[28]

---

[25] 8th Cir. model jury instructions, 4.40, *Vaughn v. Ruoff*, 304 F.3d 793, 796 (8th Cir. 2002).
[26] 8th Cir. model jury instructions, 4.72.
[27] 8th Cir. model jury instructions, 4.72.
[28] 8th Cir. model jury instructions, 4.48.

24

WHEREFORE, each Plaintiff prays for compensatory damages against Defendant City of Florissant for violation of her constitutional rights, and for taxable costs, non-taxable costs, and reasonable statutory attorney's fees under 42 U.S.C. § 1988, and for such other relief as may be just, meet and reasonable.

Respectfully Submitted,

Attorneys for Plaintiffs

  /s/ W. Bevis Schock  .
W. Bevis Schock, 32551MO
Attorney at Law
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax:    314-721-1698
Voice:  314-726-2322

  /s/ Daniel L. Goldberg  .
Daniel L. Goldberg, 36982MO
Attorney at Law
228 North Main Street
St. Charles, MO 63301
dgoldberg@228northmain.com
Fax     (636) 949-8277
Voice:  (636) 949-0010

CERTIFICATE OF SERVICE

The undersigned certifies that on December 18, 2025, he served this document on:

All counsel of record, by electronic filing.

Defendant Alcala by regular mail to the address where he was served.

   /s/ W. Bevis Schock   .